1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    CARLTON DWAYNE FIELDS,                    No. 2:16-cv-1085 JAM AC P

12                    Plaintiff,

13          v.                                   FINDINGS AND RECOMMENDATIONS

14    DANIEL PARAMO, et al.,

15                    Defendants.

16

17          Plaintiff, a state prisoner proceeding pro se and in forma pauperis, has filed this civil

18    rights action seeking relief under 42 U.S.C. § 1983.  The matter was referred to this court

19    pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

20          Before this court are motions to dismiss filed by defendants Alexander Liu, M.D. and

21    James Jackson, M.D. (ECF Nos. 19, 26, respectively), a motion to strike filed by defendant Liu

22    (ECF No. 19), and a motion for summary judgment filed by plaintiff (ECF No. 38).  For the

23    reasons stated below, the court recommends that defendants' motions to dismiss be granted and

24    that defendant Liu's motion to strike and plaintiff's motion for summary judgment both be denied

25    as moot.

26    I.    RELEVANT FACTS AND PROCEDURAL HISTORY

27          In plaintiff's second amended complaint ("SAC"), he raises two claims.  First, he claims

28    that while he was housed at Mule Creek State Prison ("MCSP") defendant Jackson, a physician

                                                   1

for MCSP, and defendant Liu, a physician at San Joaquin General Hospital to whom MCSP had referred plaintiff for a urology consult, violated his First Amendment right to the free exercise of religion when they denied his religiously-motivated request for a circumcision.  See ECF No. 12 at 2-4, 8-9.  Second, plaintiff claims that the denial of circumcision for religious purposes violated his rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").  See id. at 5.  Plaintiff seeks injunctive relief requiring San Joaquin Urology to perform his religious circumcision.  He also seeks punitive damages in the amount of $25,000 or whatever amount the court deems just.  See id. at 7.[1]

On August 11, 2017, defendant Liu filed both a motion to dismiss plaintiff's SAC and, in the alternative, a motion to strike plaintiff's request for monetary damages.  ECF No. 19.  Thereafter, on September 8, 2017, defendant Jackson filed a motion to dismiss.  ECF No. 26.  On September 26, 2017, plaintiff filed an opposition to defendants' motions to dismiss.[2]  ECF No. 29.

On October 2, 2017, defendant Liu filed a reply to plaintiff's opposition to his motion to dismiss.  ECF No. 30.  Defendant Jackson filed his reply to plaintiff's opposition on October 4, 2017.  ECF No. 31.  On October 12, 2017, plaintiff filed a "reply memorandum" which responded to defendants' replies.[3]  ECF No. 32.

On June 11, 2018, plaintiff filed a motion for summary judgment.  ECF No. 38.  Defendant Liu filed objections to plaintiff's motion on June 13, 2018.  ECF No. 39.  Defendant Jackson filed his objections to the motion on July 3, 2018.  ECF No. 40.

////

////

---

[1]  The SAC omitted all claims against defendants other than Jackson and Liu.  Because an amended complaint supersedes earlier pleadings, Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967), all other defendants are deemed voluntarily dismissed by plaintiff.

[2]  In plaintiff's opposition to the motions to dismiss, plaintiff did not address defendant Liu's motion to strike.  See generally ECF No. 29.

[3]  In light of the ultimate recommendation in this case, and given the fact that the content of the replies do not add to the substantive, relevant analyses, the undersigned has not outlined their content herein.

II.     DEFENDANTS' MOTIONS TO DISMISS

A.     Defendant Liu's Motion

Defendant Liu contends that the claims against him should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because:  (1) he cannot be liable in his individual capacity under RLUIPA; (2) plaintiff's First Amendment religious expression claim fails to allege that Liu is a state actor under 42 U.S.C. § 1983; (3) plaintiff's First Amendment religious expression claim fails to allege that Liu burdened plaintiff's ability to practice Judaism, and (4) even if Liu is considered to have engaged in state action, he is entitled to qualified immunity.  See ECF No. 19-1 at 2.

Liu also argues that plaintiff is not entitled to damages because the only harm alleged is psychological and spiritual in nature, and the Prison Litigation Reform Act ("PLRA") prohibits recovery for mental and emotional injury alone.  See id. at 10-11.  Liu contends that plaintiff's request for punitive damages must be stricken because such damages are only available in a Section 1983 action when the conduct in question is motivated by evil motive or intent, or when it involves reckless indifference to the federally protected rights of others, which is not the case here.  See id. at 11.

B.     Defendant Jackson's Motion

Defendant Jackson contends that the claims against him should be dismissed because:  (1) RLUIPA does not impose affirmative duties on states to subsidize the exercise of religion, and therefore a prison is not obligated to fund a prisoner's request for a non-medically-indicated circumcision; (2) Jackson cannot be liable for monetary damages on the RLUIPA claim because the statute does not create individual liability, and the Eleventh Amendment bars official-capacity damages; (3) it is clear on the face of the complaint that the denial of plaintiff's circumcision was reasonably related to legitimate penological interests, and (4) even if plaintiff has raised a cognizable Free Exercise Clause claim, defendant Jackson is entitled to qualified immunity because no reasonable doctor would have known beyond debate that denying plaintiff a referral for a non-medically-indicated circumcision would violate plaintiff's religious rights.  See ECF No. 26-1 at 4-9.

Defendant Jackson also argues that plaintiff's request for injunctive relief should be denied because since the filing of his complaint, plaintiff has been transferred from Mule Creek State Prison ("MCSP") – where the alleged violations took place – to a different institution, and plaintiff has not alleged that he is likely to be transferred back to MCSP. <u>See</u> <u>id.</u> at 10. Jackson accordingly contends that the request for injunctive relief is moot. Finally, he argues that plaintiff has failed to assert that Jackson, a urologist, could unilaterally perform a circumcision on plaintiff if injunctive relief were ordered. <u>See</u> ECF No. 26-1 at 10-11.

      C.   <u>Plaintiff's Opposition</u>

Plaintiff's opposition reiterates many of the arguments in his SAC. <u>See</u> <u>generally</u> ECF No. 29. He points out that even though he has requested a circumcision for religious purposes, he also has "ongoing medical problems with [his] foreskin." <u>See</u> <u>id.</u> at 2. In response to defendant Liu's claim that he is not a state actor, plaintiff argues that prison officials, state employees and doctors who contract with the states alike, are all individuals acting under color of law. <u>See</u> <u>id.</u> at 4-5. Plaintiff generally disputes defendants' suggestion of potential health and cost concerns, pointing out that a circumcision procedure "is a one[-]time visit which heals in no more than 10 days" and that "no further medication [is] needed to recover." <u>Id.</u> at 6.

      D.   <u>Standards of Review:  Federal Rules of Civil Procedure 12(b)(6) and 12(f)</u>

         1.   <u>Rule 12(b)(6):  Motion to Dismiss</u>

Federal of Rule Civil Procedure 12(b)(6) permits an action to be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, <u>Hospital Bldg. Co. v. Rex Hospital Trustees</u>, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421, <u>reh'g denied</u>, 396 U.S. 869 (1969). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 563 (2007). Thereafter, a plaintiff "receives the

1  benefit of imagination, so long as the hypotheses are consistent with the complaint." Sanjuan v.

2  American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994)

3  Conversely, to survive a motion to dismiss for failure to state a claim, a pro se complaint

4  must contain more than "naked assertions," "labels and conclusions," or "a formulaic recitation of

5  the elements of a cause of action." See Twombly, 550 U.S. at 555-57. In other words,

6  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

7  statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim upon which the

8  court can grant relief must have facial plausibility. Twombly, 550 U.S. at 570. "A claim has

9  facial plausibility when the plaintiff pleads factual content that allows the court to draw the

10  reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at

11  678.

12      2.  Rule 12(f): Motion to Strike

13  Federal Rule of Civil Procedure 12(f) permits the court to strike parts of a pleading. It

14  reads in its entirety as follows:

15      **(f) Motion to Strike.** The court may strike from a pleading an insufficient

16  defense or any redundant, immaterial, impertinent, or scandalous mater. The court
may act:

17      **(1)** on its own; or

    **(2)** on motion made by a party either before responding to the pleading

18  or, if a response is not allowed, within 21 days after being served with the pleading.

19  Fed. R. Civ. P. 12(f).

20      E.   Applicable Law

21      1.  First Amendment Free Exercise Clause

22  "Inmates clearly retain protections afforded by the First Amendment . . . including its

23  directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz,

24  482 U.S. 342, 348 (1987) (citations omitted). Nevertheless, "[l]awful incarceration brings about

25  the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the

26  considerations underlying our penal system." Id., 482 U.S. at 348. For example, "[i]nmates . . .

27  have the right to be provided with food sufficient to sustain them in good health that satisfies the

28

dietary laws of their religion." McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir. 1987).

To implicate the Free Exercise Clause, a plaintiff must demonstrate that prison officials substantially burdened the free exercise of his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008). The underlying religious belief must be "sincerely held." Malik v. Brown, 16 F.3d 330, 333 (9th Cir.1994); see also Shakur, 514 F.3d at 884-85 (noting that the "sincerity test," not the "centrality test," applies to a free exercise analysis).

A plaintiff must also demonstrate that the burden on the free exercise of his sincerely-held religious beliefs is substantial. "In order to reach the level of a constitutional violation, the interference with one's practice of religion must be more than an inconvenience; the burden must be substantial[.]" Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir.1997) (citation and internal quotation marks omitted), overruled in part on other grounds by Shakur, 514 F.3d at 884-85. A substantial burden exists where the state "put [s] substantial pressure on an adherent to modify his behavior and to violate his beliefs[.]" Thomas v. Review Board, 450 U.S. 707, 718 (1981).

A prison policy that substantially burdens a prisoner's right to freely exercise his religion will be upheld only if it is reasonably related to a legitimate penological interest. Id. As explained by the Ninth Circuit in Shakur, the following four factors, identified by the Supreme Court in Turner v. Safley, 482 U.S. 78 (1987), must be balanced in determining whether a prison regulation is reasonably related to a legitimate penological interest:

> (1) Whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>
> (2) Whether there are alternative means of exercising the right that remain open to prison inmates;
>
> (3) Whether accommodation of the asserted constitutional right will impact guards and other inmates, and on the allocation of prison resources generally; and
>
> (4) Whether there is an absence of ready alternatives versus the existence of obvious, easy alternatives.

Shakur, 514 F.3d at 884 (citing Turner, 482 U.S. at 89-90 (internal quotation marks and citation omitted)).

2. <u>Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA")</u>

The Religious Land Use and Institutionalized Persons Act of 2000 provides:

**(a) General rule**

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . ., even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on the person –

(**1**) is in furtherance of a compelling government interest; and

(**2**) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1.

RLUIPA does not authorize suits against a person in anything other than an official or government capacity. <u>Wood v. Yordy</u>, 753 F.3d 899, 904 (9th Cir. 2014). Personal, or individual liability of government employees is not contemplated. <u>See id.</u> Moreover, RLUIPA provides only for injunctive or declaratory relief against defendants acting within their official capacities. Thus, money damages are not available under RLUIPA against state officials sued in their official capacities. <u>Alvarez v. Hill</u>, 667 F.3d 1061, 1063 (9th Cir. 2012) (citing <u>Sossamon v. Texas</u>, 563 U.S. 277 (2011)).

F. <u>Discussion</u>

The SAC does not clearly specify the capacity in which plaintiff has intended to sue defendants Liu and Jackson. <u>See generally</u> ECF No. 12. The court will liberally construe the SAC to assert all claims against defendants in both their individual and official capacities.

1. <u>Free Exercise Clause Claim</u>

a. <u>Sincerely-Held Religious Belief</u>

The SAC points to several verses in the Torah that either direct circumcision to take place or state its importance in Judaism. <u>See id.</u> at 4. Neither defendant contests the sincerity of plaintiff's belief that circumcision is a requirement of his religion. The allegations of the complaint adequately establish that plaintiff holds a sincere religious belief in the importance of circumcision. <u>See Malik</u>, 15 F.3d at 333.

b.  Substantial Burden

Next, the court considers whether defendants denying plaintiff a circumcision constitutes

a "substantial burden" on plaintiff's ability to practice his faith.  To the extent that remaining

uncircumcised places plaintiff in a state of ongoing non-compliance with a religious imperative,

the denial of circumcision requires plaintiff to violate his beliefs.  Accordingly, the court will

assume for purposes of analysis that denying plaintiff a circumcision constitutes a substantial

burden.  See Thomas, 450 U.S. at 718.

c.  Reasonably Related to Legitimate Penological Interests

Assuming defendants' failure to provide a circumcision substantially burdens the free

exercise of plaintiff's sincerely-held religious beliefs, the question becomes whether the grounds

for the denial are reasonably related to legitimate penological interests.  See Thomas, 450 U.S. at

718.  Accordingly, the court considers the Turner v. Safley factors.

Defendant Jackson contends that circumcision is not medically necessary for plaintiff.

See ECF No. 26-1 at 3, 7-8.  Defendant Liu makes a similar argument.  See ECF No. 19-1 at 2-3.

Both defendants point out that the prison has a policy, codified by statute, that denies inmates

medical procedures that are not medically necessary.  See ECF No. 19-1 at 2-3, 9; ECF No. 19-2

at 9; see also ECF No. 26-1 at 7-8 (citing to Cal. Code Regs. tit. 15, § 3350 et seq.).  Defendant

Liu has provided copies of the prison regulations which mandate the denial of inmate surgeries

that are not medically necessary.  See generally ECF No. 19-2 at 9-16.  Exhibits provided by

plaintiff also support defendants' contention that prison officials have determined that plaintiff's

circumcision is not medically necessary.  See ECF No. 12 at 8-9.

Finally, defendant Jackson argues that it is reasonable for the prison to deny plaintiff

circumcision because as a surgical procedure, it poses risks and potential complications that could

affect plaintiff's health without any medical benefit.  See ECF No. 26-1 at 7.  Moreover, surgeries

that are not medically necessary and which are elective in nature have the potential to pose

problems related to the alteration and/or removal of identifying characteristics that may be needed

for identification purposes.  See Vega v. Lantz, No. 3:04-cv-1215 (DFM), 2013 WL 6191855, at

*6 (D. Conn. Nov. 26, 2013) ("Elective surgery could alter a prisoner's identifying

characteristics.").  Also, other districts have found that elective procedures place an unreasonable cost burden on the prison system.  See generally Vega, 2013 WL 6191855, at *6 ("It would be eminently unreasonable to allocate taxpayer money to elective surgeries for prisoners."); Muhammad v. Crosby, No. 4:05-cv-0193, 2009 WL 2913412, at *11-12 (N.D. Fla. Sept. 3, 2009) (finding mandated provision of religiously-mandated dental surgery could lead to demands from other inmates for other types of cosmetic services and that institution had compelling governmental interest in avoiding such problems).  The Ninth Circuit has recognized that such budgetary constraints are legitimate penological interests to be considered in the Turner analysis. Shakur, 514 F.3d at 885-86.

The connection between the policy of denying elective surgeries and the legitimate governmental interests asserted here is both valid and rational, so the first Turner factor weighs in defendants' favor.  See Turner, 482 U.S. at 89 (court must consider whether "there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it.").  Accommodating plaintiff's asserted right to circumcision would have an obvious impact on prison resources, so the third Turner factor – the impact of accommodation on the system generally – also weighs in defendants' favor.  See id. at 90.

The second Turner factor considers the availability of alternative means for plaintiff to practice his religion.  "The relevant inquiry under this factor is not whether the inmate has an alternative means of engaging in the particular religious practice that he or she claims is being affected; rather, we are to determine whether the inmates have been denied all means of religious expression."  Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1993) (citing O'Lone, 482 U.S. at 351-52).  Although there are not alternative means for plaintiff to access circumcision while incarcerated, there is no suggestion in this case that plaintiff is otherwise being denied religious expression.  This factor therefore weighs in defendants' favor.

The fourth Turner factor requires courts to consider whether there is an "absence of ready alternatives" to the challenged prison policy.  Turner, 482 U.S. at 90.  This factor requires the court to consider whether "there are ready alternatives to the prison's current policy that would accommodate [plaintiff ] at de minimis cost to the prison."  Ward, 1 F.3d at 879.  The "existence

of obvious, easy alternatives may be evidence that the [challenged policy] is not reasonable, but is an 'exaggerated response' to prison concerns." <u>Turner</u>, 482 U.S. at 90; <u>see also</u> <u>Shakur</u>, 514 F.3d at 887. The burden is on plaintiff to show that there are obvious, easy alternatives to the challenged policy. <u>O'Lone</u>, 482 U.S. at 350. Plaintiff has not met that burden here. He argues, in essence, for a religious circumcision exception to the statute and policy prohibiting elective surgeries. Such an exception would not involve de minimus costs, and would create risks attendant to the provision of surgeries that are not medically necessary. Those risks include risks to individual inmate health and safety, and potential risks of liability. There are no obvious and easy alternatives to the department's policy that suggest the policy is an "exaggerated response" to prison concerns.

For the reasons explained above, all four <u>Turner</u> factors favor defendants. Accordingly, plaintiff cannot prevail on his claim that the denial of circumcision pursuant to department policy violates his rights under the Free Exercise Clause of the First Amendment. Plaintiff's constitutional claim against defendants Liu and Jackson should be dismissed for failure to state a claim upon which relief may be granted. <u>See</u> Fed. R. Civ. P. 12(b)(6).[4]

### d. Qualified Immunity Considerations

Even if plaintiff's allegations stated a cognizable claim under the Free Exercise Clause, the qualified immunity doctrine would preclude liability. That doctrine "gives government officials breathing room to make reasonable but mistaken judgments" and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 743 (2011) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)). It makes allowance for some constitutional mistakes, such as when an officer reasonably believes that his or her conduct complies with the law. <u>See</u> <u>Sjurset v. Button</u>, 810 F.3d 609, 615 (9th Cir. 2015).

Qualified immunity protects government officials from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware. <u>Messerschmidt v. Millender</u>, 565 U.S. 535, 546

---

[4] Because plaintiff's claims for damages must be dismissed pursuant to Rule 12(b)(6), the court does not address defendant Liu's alternative arguments under Rule 12(f).

(2012); Mueller v. Auker ("Mueller II"), 700 F.3d 1180, 1185 (9th Cir. 2012) (citing Messerschmidt). A right is considered clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Reichle v. Howards, 566 U.S. 658, 664 (2012) (internal quotation marks and alterations omitted). Existing precedent must place the statutory or constitutional question beyond debate. Id.

As both defendants argue, they are immune from liability in this case because no reasonable doctor or prison official would have known beyond debate that denying plaintiff a referral for a non-medically necessary circumcision would violate plaintiff's religious rights. See ECF No. 19-1 at 2; see also ECF No. 26-1 at 9. Very few federal courts, all of them district courts, have addressed the question whether prisoners have a free exercise right to circumcision – and none of those courts have found such a right. See, Tormasi v. Lanigan, 363 F. Supp. 3d 525, 537-40 (D.N.J. 2019); Vega, supra, 2012 WL 5831202, at *3; Celestin v. Fischer, No. 9:12-cv-1612 (GTS/ATB), 2013 WL 5406629, at *5-8 (N.D.N.Y. Sept. 25, 2013). There are neither Supreme Court nor federal appellate cases that address prisoners' right to religious circumcision. See Tormasi, 363 F. Supp. 3d at 538 (stating Vega and Celestin appear to be only federal cases to have considered question of whether prisoner may demonstrate violation of right arising from denial of request for religious circumcision).[5]

What constitutes clearly established law for qualified immunity purposes is not to be defined at a high level of generality. See White v. Pauly,137 S. Ct. 548, 552 (2017) (per curiam); Reichle, 566 U.S. at 665 (reiterating right allegedly violated must be established not as a broad general proposition, but in a particularized sense); Perez v. City of Roseville, 926 F.3d 511, 519 (9th Cir. 2019) (citing White). The absence of fact-specific authority for plaintiff's asserted right thus indicates that it was not clear at the time plaintiff was denied circumcision that doing so was unconstitutional.

Defendants' failure to provide a circumcision for religious reasons was not an unlawful deprivation of clearly established law or constitutional rights guaranteed to plaintiff under the

_____

[5] The court's independent research confirms this proposition.

Free Exercise Clause of the First Amendment.  See generally Messerschmidt, 565 U.S. at 546

(2012) ("clearly established" standard); see also Mueller II, 700 F.3d at 1185.  Accordingly, even

if plaintiff had stated a claim under the First Amendment, defendants would be entitled to

qualified immunity.

### 2. RLUIPA Claims

RLUPIA does not contemplate the liability of government employees in their individual

capacities.  Wood, 753 F.3d at 904.  Nor does the statute provide for monetary damages from

government employees in their official capacities.  Holley v. Cal. Dep't of Corr., 599 F.3d 1108,

1114 (9th Cir. 2010).  Prospective injunctive relief, however, is available in appropriate cases

from government employees in their official capacities.  See Mayweathers v. Newland, 314 F.3d

1062, 1069-70 (9th Cir. 2002).  Plaintiff's request for such relief is moot, however, for the

reasons now explained.

A review of the docket in this action[6] shows that at the time plaintiff filed his original

complaint, he was being housed at the R.J. Donovan Facility in San Diego.  See ECF No. 1 at 1.

The circumcision claim, regarding which he seeks injunctive relief, arises from events that had

occurred earlier at MCSP.  See id. at 3.  Approximately one month after the commencement of

the action, plaintiff was transferred to California Medical Facility in Vacaville, and about three

months later to Corcoran State Prison.  See ECF Nos. 6, 7.  It was from Corcoran that plaintiff

filed both his first and second amended complaints.  See ECF No. 8 at 1; see also ECF No. 12 at

1.

Since filing the SAC, plaintiff has been moved to California Medical Facility in Vacaville,

and from there, to California State Prison – Sacramento.[7]  Today, plaintiff is housed at the

---

[6]  The court takes judicial notice of the docket in this case and the documents filed therein.  It is well-established that a court may take judicial notice of its own records.  See United States v. Howard, 381 F.3d 873, 876 n.1 (9th Cir. 2004); see United States v. Author Servs., Inc., 804 F.2d 1520, 1523 (9th Cir. 1986) overruled on other grounds, United States v. Jose, 131 F.3d 1325, 1328-29 (9th Cir. 1997); see also Fed. R. Evid. 201 (stating court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot be reasonably questioned).
[7]  On October 4, 2017, plaintiff filed a change of address form in another matter he had with the court.  See Fields v. Castrillo, No. 2:17-cv-1068 AC P (E.D. Cal. Oct. 15, 2018) ("Castrillo"),

1  California Correctional Institution in Tehachapi.  See ECF No. 44 at 1.

2         In sum, since plaintiff filed his original complaint against defendants at MCSP, where the

3  violations of right are alleged to have occurred, he has been relocated to several other prisons.

4  Throughout these proceedings, plaintiff has never been returned to MCSP.  In addition, plaintiff

5  has not stated in any of his filings that he has any reason to believe he will be returned there,

6  where he will again be denied a circumcision by the defendants in violation of his rights under

7  RLUIPA.

8         "Once an inmate is removed from the environment in which he is subjected to the

9  challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable

10  interest in a judicial decision on the merits of his claim."  Jones v. Williams, 791 F.3d 1023, 1031

11  (9th Cir. 2015) (citing Alvarez, 667 F.3d at 1064).  Federal courts lack jurisdiction over claims

12  that have been rendered moot because "the issues are no longer live" or because the parties no

13  longer possess "a legally cognizable interest in the outcome."  Jones, 791 F.3d at 1031 (quoting

14  Alvarez, 667 F.3d at 1064).  Because plaintiff is no longer housed at MCSP, the location where

15  the incidents occurred that gave rise to plaintiff's RLUIPA claim, and because plaintiff has not

16  pled facts demonstrating he will be returned to MCSP, plaintiff's claims for relief under

17  RLUIPA are moot.

18         To the extent that the claim is saved from mootness because the prohibition on elective

19  surgery applies to all California prisons, the moving defendants are correct that the claim does not

20  lie against them.  The complaint does not allege, and could not plausibly allege, that Dr. Jackson,

21  a physician at MCSP at the time of the alleged violation, and Dr. Liu, a physician at San Joaquin

22  General Hospital, have the ability to provide plaintiff with a circumcision regardless of his

23  location, or the authority to order that a circumcision be performed.  Prospective injunctive relief

24  is available only from the government official or officials who have authority to implement the

25  requested relief.  See Will v. Michigan Dept. of State Police, 491 U.S. 58, 92 (1989).  The only

26  _____

27  ECF No. 12.  The docket in this case was annotated on the same date to note plaintiff's change of
    address to CMF.  Plaintiff's subsequent move to CSP-SAC was noticed only in Castrillo, at ECF
28  No. 20.

defendants named in the operative complaint, and thus the only defendants over whom this court has jurisdiction, are individual medical providers and not officials with authority over CDCR policy or the ability to order an elective surgical procedure in contravention of such policy. Accordingly, plaintiff has not stated a claim for which relief may be granted, and his RLUIPA claim must be dismissed

### III. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Because the undersigned has determined that both defendants' motions to dismiss should be granted, plaintiff's motion for summary judgment is moot.

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant Liu's motion to dismiss, ECF No. 19, be GRANTED;

2. Defendant Jackson's motion to dismiss, ECF No. 26, be GRANTED;

3. Plaintiff's motion for summary judgment, ECF No. 38, be DENIED as moot; and

4. Judgment be entered for defendants and the case closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 24, 2019

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE